CAMPBELL and another, Administrators of CAMP-
BELL, *against* the Lessee of GRATZ.

IN ERROR.

*Pittsburg*,
*Thursday*,
September 16.

THIS was an ejectment brought against *Patrick Campbell* the intestate, to *March* term 1797, in the Common Pleas of *Westmoreland*. The *Narr* laid the demise on the 1st of *January* 1793, for ten years. After the institution of the suit, it was removed to the Circuit Court, where in 1799 the Court on motion enlarged the term to fifteen years, and in *November* 1800, it was tried and a verdict found in favour of the plaintiff for one undivided moiety of the lands in question. After the judgment, the original defendant took a lease from *Gratz*, and a new lease was afterwards granted to *William Campbell*, son of the original defendant, by *Gratz's* devisee, between which parties a dispute had arisen as to possession. At *May* term 1811, a writ of *habere facias* was issued, together with a *fi. fa.* for costs, and under these executions, possession was delivered, and the costs made. A motion was then made to set aside both executions; but the court merely set aside the *fi. fa.*, and suffered the other to stand.

Motion to enlarge the term in ejectment, in order to support an execution, refused after the lapse of several years from the judgment, and from the expiration of the term, and after a new party had come into possession.

After this writ of error was returned, *Wilkins* for the defendant in error, moved the Court to enlarge the term to 25 years, upon the ground that the term is merely a fiction, that the powers of a court of error are as competent to amend in such a case, as those of the original court, and that in point of principle there is no difference between enlarging the term to support the judgment, which is done every day, and enlarging it to support an execution, which is the ob-

ject here. He cited *Tillotson* v. *Cheetham* (a), 2 *Tidd's Practice* 1028., 1 *Tidd's Practice* 662., *Crasner* v. *Van Alstyne* (b), and *Dunlap* v. *Speer* (c)

*Foster* contra, said that the motion was made in order to support an execution illegally taken out, which was contrary to all precedent; that further, the plaintiff had been in complete possession by his lease to the tenant, and ought to pursue the usual remedies between landlord and tenant; that the present tenant was not the party recovered against, and that as tenant he was entitled to notice to quit, instead of having an execution sprung upon him from a judgment that had been sleeping thirteen years. That whatever might be the power of the Court, they would not exercise it under circumstances like these.

TILGHMAN. C. J. The Courts have long exercised the right of enlarging the term in ejectments, both before and after judgment, considering it as no more than an instrument by which the cause is brought to trial; and of late even Courts of error have made the same amendments which the inferior court might have done. All this is for the sake of supporting a judgment after trial of the merits. The plaintiffs in error now ask us to go one step further. If the Court will grant an amendment to support a *judgment*, says he, why not also to support an *execution?* If at the time of judgment the term should be near expiring, and the plaintiff should inadvertently suffer it to run out before he issues his execution, he would have much to say in favour of an amendment, especially if the original defendant remained in possession. But the parties in this suit are now changed, thirteen years have elapsed since the judgment, and five since the expiration of the term. Upon the principle contended for by the plaintiff, a judgment in ejectment might be made use of for twenty years, as an instrument to obtain possession from whatever tenant might be placed on the land by the defendant, or those claiming under him. This might produce great injustice, and would be contrary to all principle, because it would be using the judgment to the prejudice of persons whose titles had never been tried. In the present case for example, what does this Court know of

(a) 3 *Johns.* 95.      (b) 9 *Johns.* 386.      (c) 3 *Binn.* 169.

*William Campbell's* title under the lease by which he was in possession? As a court of error we know nothing that is not in the record; and are we to go out of it for the purpose of trying the defendant's title, and in what manner are we to try it? for the facts are not agreed on. It seems the plaintiff had virtual possession by the attornment of the original defendant, who after the judgment took a lease from him. But now, a dispute has arisen between the devisee of the original plaintiff and the son of the original defendant, to whom a new lease was granted. Suppose the plaintiff had taken out his execution, and having obtained possession, had made a lease to the defendant, could he have regained the possession by a second execution? Certainly not. He would have been left to the usual remedy of landlord against tenant. Besides, as the discretion of the Court is appealed to by this motion, it appears to me that it would have been more proper for the plaintiff to have applied to the Court of Common Pleas, before issuing the execution. That Court might have enquired into the matter, after having called the other party before them. An opportunity of being heard ought to have been given, because turning a man out of possession and selling his goods are serious matters. Upon the whole, considering the length of time and change of parties, I am of opinion that it would be establishing a dangerous precedent, supposing this Court has the power of granting the amendment, to exercise it on the present occasion.

I am of opinion therefore that the motion should not be granted.

YEATES J. gave no opinion, being kept from Court by sickness.

BRACKENRIDGE J. concurred with the Chief Justice.

Motion denied.